UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GERALD ANTHONY CAPONI,
    Plaintiff,

-v-                                  CASE NO. 2:08-CV-182-DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## OPINION AND ORDER[1]

This matter is before the Court on the Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying his claim for Social Security disability insurance ("SSDI"). The Plaintiff timely pursued and exhausted his administrative remedies making this claim ripe for review under section 216(i) and 223(d), respectively of the Social Security Act. The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda. For the reasons set forth below, the Court is **reversing** the decision of the Commissioner and **awarding** the Plaintiff benefits.

---

[1]     Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred by Order to Magistrate Judge Douglas N. Frazier on June 4, 2008. (Doc .# 17).

## I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION AND STANDARD OF REVIEW

The Plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether the plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The Plaintiff protectively filed an application for a period of disability and disability insurance benefits on October 22, 2004. The Plaintiff alleges disability beginning September 17, 2004. [Tr. 22, 67-69]. The Plaintiff's application was denied initially on April 7, 2005 and upon reconsideration on August 17, 2005. The Plaintiff filed a request for hearing on October 5, 2005. (Tr. 22). The Plaintiff was represented by counsel and testified at a Video Hearing held on May 15, 2007. The Plaintiff appeared in Ft. Myers, Florida and Administrative Law Judge Ann S. Azdell presided over the hearing from Tampa, Florida. (Tr. 22, 221-237). The ALJ denied benefits in her decision dated June 25, 2007. (Tr. 24). Plaintiff requested a review of the hearing decision on September 20, 2007, and the Appeals Council denied the request on February 7, 2008. (Tr. 5-9). The Plaintiff has exhausted his administrative remedies, and timely filed a complaint with this Court.

At Step 1 the ALJ found the Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of September 17, 2004, through his date last insured of December 31, 2005. (Tr. 24). At Step 2 the ALJ found the Plaintiff suffered from the following severe impairments: coronary artery disease, status post myocardial infarction, hypertension, hyperlipidemia and osteoarthritis. (Tr. 24). The ALJ found the Plaintiff to not be entirely credible. At Step 3, the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairments, any of the impairments in Appendix I, Listing of Impairments, 20 C.F.R. §§ Part 404, Subpart P, Regulations No. 4. (20 C.F.R. 404.1520(d), 404.1525 and 404.1526. (Tr. 16). At Step 4, the ALJ determined the Plaintiff had the residual functional capacity to lift, carry, push and pull up to 20 pounds occasionally; ten pounds frequently, sit, stand or walk up to six hours in an eight hour day and that the Plaintiff is limited to occasionally crouching, stooping, balancing or climbing stairs and ramps. The Plaintiff must avoid climbing ropes, ladders and scaffolds as well as kneeling and crawling and should avoid dangerous, moving machinery, unprotected heights and concentrated exposure to heat, cold and humidity. [Tr. 25]. At step 5, the burden shifts to the Commissioner only after the Plaintiff has proven that he is unable to engage in past relevant work and to determine if there is other work available that the Plaintiff can perform. 20 C.F.R. §§ 494.1520(g), 416.920(g). The ALJ determined that through his date last insured, the Plaintiff's past relevant work as a survey

worker[2] did not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity which the ALJ determined to be at the light and unskilled level. (Tr. 27).

The Plaintiff testified that his job as a market researcher involved traveling to different job sites, telephone work and interviewing people. The ALJ reviewed and evaluated the medical evidence of record and found the Plaintiff was not disabled. [Tr. 22-28). Based on the testimony of a vocational expert (VE), the ALJ found the Plaintiff could perform his past relevant work as a survey worker.

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Crawford, 363 F.3d at 1158. Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The magistrate judge, district judge and appellate judges all apply the same legal

---

[2] The Plaintiff identified his past relevant work as a market researcher; however, at the administrative hearing, the VE testified that the job listed in the Dictionary of Occupational Titles (DOT) most similar to Plaintiff's description of his past relevant work as a market researcher is a survey worker. [Tr. 224, 233].

4

standards to the review of the Commissioner's decision. Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1282 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II. REVIEW OF FACTS AND CONCLUSIONS OF LAW

### A. BACKGROUND FACTS:

The Plaintiff was born on September 23, 1960. The Plaintiff at 45 years old is considered "a younger individual (age 45-49) as of the date he was last insured for benefits. The Plaintiff has a GED and received computer training in 1988. The Plaintiff's past work history consists of a position as a general contractor, carpenter, mail carrier, truck driver, market researcher, foreman and manager. (Tr. 75-80, 84, 88, 93, 223-226, 233). The Plaintiff was insured for benefits through December 31, 2005. (Tr. 24, 64, 90).

The Plaintiff was hospitalized from September 19 through September 22, 2004, for an acute myocardial infarction at a hospital in New Jersey. (Tr. 125-141). Dr. Leonard Feitell, M.D., reported that the Plaintiff had chest pain, nausea and diaphoresis. He was found to have an acute inferior wall MI upon admission. He was treated with thrombolytic therapy and showed moderate improvement. Dr. Feitell had the Plaintiff transferred to Deborah Heart and Lung Center (New Jersey) where he was treated through September 25, 2004. (Tr. 126, 137-141).

On admission the Plaintiff was noted to have a history of osteoarthritis and his blood pressure was 146/90. Impression was acute inferior wall myocardial infarction post thrombolytic therapy NSR compensated, osteoarthritis and positive smoking. (Tr. 151-153).

The Plaintiff underwent diagnostic cardiac catheterization which revealed "[a] totally occluded proximal segment of a right [dominant] coronary artery and normal left coronary artery." After attempting to intervene the right coronary artery with Angiojet and balloon valvuloplasty on the entire right coronary arterial segment the Plaintiff was found to have a total occlusion. The Plaintiff could not be recanalized and no further attempt was made. The Plaintiff was sent to the Interventional Unit for a few days because of recurrent episodes of chest pain, which was controlled with routine anginal medication. The Plaintiff was advised to continue medical management. [Tr. 144-150]. The Plaintiff was discharged with myocardial infarction with unsuccessful intervention of the right coronary artery and hypertension. [Tr. 142]. The Plaintiff was discharged on Aspirin, Plavix, Zocor and Zetia, Vasotec and Atenolol, advised to stay on a low salt and cholesterol diet and increase his activities "as tolerated." (Tr. 142-143).

On October 8, 2004, Dr. Robert L. Masci referred the Plaintiff for a stress test. The Plaintiff had begun taking short walks at home and had quit smoking. The EKG showed poor R-wave progression anteriorly, Q-waves in anterolateral leads, T-wave inversions diffusely in the inferior and anterolateral leads indicative of coronary artery disease. The test lasted 6 minutes and the Plaintiff showed minimal shortness of breath and appeared well. Dr. Masci reported that "Mr. Caponi's low level exercise treadmill study was negative," and he was released to return to Florida. The Plaintiff was on "Plavix 75 mg. per day, Enalapril 2.5 mg. per day, Atenolol 25 mg. Per day, Zocor 40 mg. per day, aspirin 325 mg. per day, Ultram 50 mg. per day and a nicotine patch." [Tr. 154-156).

6

The Plaintiff was treated by Dr. Allen L. Tannebaum from January 2, 2005 through August 10, 2005. [Tr. 169-180). The Plaintiff advised of weight gain, fatigue, blurred vision, hearing loss, heart problem, shortness of breath, dyspnea on exertion, joint pain in his hands and feet and overall joint stiffness. The Plaintiff also advised he was having muscle weakness and pain, frequent memory loss/confusion, nervousness/depression, difficulty sleeping and heat intolerance. (Tr. 172-175). The Plaintiff weighed 235 pounds; his EKG was abnormal and the spirometry testing revealed him to have a lung age of 76 years. Dr. Tannenbaum's initial impression was status post mycardial infarction, fatigue from Tenormin (which was changed to InnoPran), and coronary artery disease. (Tr. 173). On his follow-up exam, the Plaintiff reported osteoarthritis of the neck and spine, he weighed 238 pounds and the exam was unremarkable. (Tr. 170). The impression remained the same. (Tr. 171). In August of 2005, the Plaintiff requested samples of Plavix because his insurance would not cover his prescription and he was advised to schedule an appointment before he could be given any samples. (Tr. 169).

On March 24, 2005, the Plaintiff was seen by Dr. Kenneth A. Berdick for a consultative evaluation at the request of the State Agency. (Tr. 157-159). The Plaintiff reported chest pain occurring about twice a week usually associated with exertion. The Plaintiff did not report musculoskeletal pain and reported gaining 25 additional pounds and was smoking about two to four cigarettes a day. (Tr. 157). On examine, the Plaintiff was found to be "somewhat overweight" at 231 pounds, 5'10" tall, blood pressure was 146/86, he had full range of joint motion and "[c]oarse breath sounds are noted with extended expiratory phase." (Tr. 158). The Plaintiff's chest pain was relieved with

nitroglycerin, he had no evidence of congestive heart failure or peripheral edema and did not complain of shortness of breath, there appeared to be no evidence of psychological or musculoskeletal difficulties and Dr. Berdick opined, "[o]bviously, weight loss and a graduated exercise program would significantly accrue to Mr. Caponi's benefit." (Tr. 159).

On September 16, 2005, the Plaintiff was seen by Dr. Edward German for an initial evaluation. (Ltr. 189-191). The Plaintiff reported feeling well and voiced no specific complaints. (Tr. 189). The Plaintiff's body mass index was 32.6 and the assessment was coronary artery disease, hypertension and cardiovascular disorder. The Plaintiff was taking Plavix, Lipitor and Enalapril Maleate and advised to return to the clinic if his condition worsened before his next scheduled appointment. (Tr. 190).

On April 6, 2006, a State agency "single decision maker" lay examiner (signature illegible), S.D.M. (Tr. 160-168) completed a residual functional capacity ("RFC") assessment showed that the Plaintiff's history of myocardial infarction, chest pain and obesity would limit him to light work with very few postural maneuvers. He opined that the Plaintiff's symptoms are attributable to a "[m]edically determinable impairment that is not disproportionate to the expected severity, but that he is capable of performing the activities identified in the assessment." (Tr. 186).

On February 1, 2007, Dr. Nessim Roumi, M.D., completed a Multiple Impairment Questionnaire. Dr. Roumi reported he had treated the Plaintiff since August 3, 2006, for inferior wall myocardial infarct, 100% occlusion of the right coronary artery, dyspnea, and hyperlipidemia. (Ltr. 193). Dr. Roumi found that the Plaintiff's symptoms and functional limitations were consistent with his impairments and that he had dyspnea on exertion,

moderately severe chest pain occurring twice a week, severe fatigue and gets pain relief with medications. (Tr. 194-195). Dr. Roumi opined that the Plaintiff can only sit for one hour during a work day, stand/walk only one hour during a workday and would need to get up and move around frequently. He further advised that the Plaintiff cannot lift or carry on a sustained basis and has significant limitation in performing repetitive lifting. (Tr. 195-196). The Plaintiff's treatment course includes rest, avoiding exertions and taking his medications.

Dr. Roumi advised that if the Plaintiff were placed in a competitive work environment his symptoms would increase. The Plaintiff's attention and concentration would be undermined by his frequent pain, fatigue and other symptoms. Further, that he would have the need to take frequent breaks during an 8-hour work day; he would have "good" and "bad" days and would probably be unable to work at least two to three times a month. Dr. Roumi opined that the Plaintiff would need to avoid wetness, fumes, gases, temperature extremes, humidity and dust. The doctor found that the plaintiff has restrictive lung disease and that his lung age is 75 and that his symptoms have been present for two and a quarter years.

The Plaintiff was represented by counsel and a vocational expert ("VE") testified at the hearing held on May 15, 2007. The Plaintiff confirmed that he last worked on September 17, 2004, which was around the time he suffered his heart attack. (Tr. 226). The Plaintiff stated that he had tried some part-time work, but wasn't able to handle it. The Plaintiff testified that he can walk about ten minutes but becomes very tired and short of breath. He related that he does not stand or sit long or lift or carry much weight. He further

revealed that at the time of his heart attack, it was found he had a coronary artery that was so severely blocked it could not be repaired surgically. He stated that during his exercise stress test in 2004, he felt dizzy and exhausted. (Tr. 224-231).

The Vocational Expert, William Harvey, testified that the closest match in the DOT to the job identified by the Plaintiff was a survey worker which is light and unskilled, while a construction worker is heavy and semi skilled, and his work as a mail carrier is medium and unskilled, and his work as a truck driver is medium and semi skilled. (Tr. 233). The VE testified that the Plaintiff could perform his past work as a survey worker as it is generally performed in the national economy. However he stated that if the person were limited to lifting, carrying, pushing and pulling 10 pounds occasionally and five pounds frequently, and standing and walking for two hours in an 8 hour day, he could not perform any of the Plaintiff's past work, but could perform essentially the full range of sedentary work. (Tr. 235). He stated that an individual limited to the degree found by the Plaintiff's treating physician, Dr. Roumi, would be unable to perform any work in the national economy on a sustained basis, i.e. 8 hours a day, 40 hours a week.

**B.   SPECIFIC ISSUES:**

    **(1)   THE ALJ COMMITTED REVERSIBLE ERROR
      IN FAILING TO SET GOOD CAUSE FOR
      REJECTING THE OPINION OF THE PLAINTIFF'S
      TREATING PHYSICIAN, DR. ROUMI**

The Plaintiff argues the ALJ did not provide adequate reasons for rejecting the opinion of treating physician, Dr. Roumi. The Commissioner considers the following factors in determining the weight to be given any medical opinion: examining relationship;

10

treatment relationship; supportability; consistency; specialization and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§404.1527(d). If a treating source's opinion regarding the nature and severity of a claimant's impairment is well-supported and is not inconsistent with the other substantial evidence, it will generally be given controlling weight. 20 C.F.R. § 404.1527(d)(2). However, even when offered by a treating source, an opinion about whether a claimant is disabled or unable to work can never be entitled to controlling weight or given special significance because these are issues reserved to the Commissioner. 20 C.F.R. §404.1527(d). Social Security Ruling (SSR 96-5p, *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986) (physician's statement that claimant is disabled is not dispositive of the issue of disability but must be considered).

In rejecting Dr. Roumi's opinions, the ALJ stated:

> The objective medical evidence documents that the claimant has a 100 percent blockage in the right coronary artery. However, treatment has consisted of conservative medical management. In October of 2004, the claimant's previous treating physician Dr. Robert Masci indicated that the claimant's stress test was essentially negative and recommended cardiac rehabilitation and some low level exercise. On March 24, 2005, the claimant reported taking walks. Dr. Berdick also recommended a graduate exercise program. (Tr. 27).

The ALJ chose to rely on the opinion of the State agency medical consultants which opinion he found to be "consistent with the overall evidence of record." (Tr. 26). In this particular case, one of the consultants is not a doctor; but a "single decision maker" as a lay disability examiner. (Tr. 160-168). The Eleventh Circuit has held that the opinion of a reviewing, non-examining physician cannot constitute substantial weight to contradict those of a treating physician. *Lamb v. Bowen*, 847 F.2d at 703, *citing Spencer on Behalf of*

*Spencer v. Heckler*, 765 F.2d 1090 (11th Cir. 1985); *Strickland v. Harris*, 615 F.2d 1103 (5th Cir. 1980). "The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician." *Lamb v. Bowen*, 847 F.2d at 703; *citing Johns v. Bowen*, 821 F.2d 551 (11th Cir. 1987). When the opinion of non examining, reviewing physicians are contrary to those of the examining physicians they are entitled to "little weight in a disability case, and standing alone do not constitute substantial evidence." *Sharfraz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). T

The ALJ's reasons for rejecting the opinion of Dr. Roumi, the Plaintiff's treating physician is not supported by substantial evidence. The ALJ's failure to provide substantiated reasons for discrediting the treating physician's opinion requires that the opinion be deemed true as a matter of law. *MacGregor v. Bowen* 786 F.2d 1050, 1053 (11th Cir. 1986). The VE testified that he if considered Dr. Roumi's opinion, there was no work that the Plaintiff could perform. (Tr. 235).

**(2)  THE PLAINTIFF CONTENDS THAT THE ALJ'S CREDIBILITY FINDING IS DEFICIENT AS A MATTER OF LAW**

The Plaintiff's testimony and the medical reports and the record indicates that he has significant limitations resulting from his cardiac condition. However, the ALJ determined that:

> "[t]he claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (Tr. 26).

The Plaintiff testified to extreme fatigue, even when he was working at his last position. (Tr. 226). The Plaintiff testified to shortness of breath, sweating, pains in his legs and arms and that he can only walk about ten minutes before he will lose his breath and get extremely tired. (Tr. 226-227). The Plaintiff was on many medications, including taking nitroglycerin for the pain.

When considering a Plaintiff's pain, the Eleventh Circuit has held that a claimant may establish that his pain is disabling through objective medical evidence that an underlying medical condition exists that would be expected to produce the pain. Once such an impairment is established, all evidence must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability. If the Commissioner rejects the allegations of pain, "he must articulate explicit and adequate reasons for doing so." *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case, the ALJ failed to comply with controlling law or with the Commissioner's own policies in making a conclusory credibility finding. The failure to articulate adequate reasons for discrediting a claimant "mandates that the testimony, as a matter of law, be accepted as true." *Cannon v. Bowen,* 858 F.2d at 1545. Again, it is obvious from the medical records that the Plaintiff has considerable pain and cannot perform sustained work activities as a result.

**(3) THE ALJ'S FINDING THAT THE PLAINTIFF RETAINS THE "RFC" TO RETURN TO HIS PAST RELEVANT LIGHT WORK AS A SURVEY WORKER IS NOT BASED ON SUBSTANTIAL EVIDENCE**

The ALJ stated that he relied on the testimony of the vocational expert in finding that

the Plaintiff can perform his past relevant work as a "survey worker." (Tr. 27). Although the VE did testify that this work was "classified as light and unskilled with an svp of 2," the ALJ did not develop the record regarding when this work was performed and to provide a basis for his finding that the Plaintiff can return to this work, as required. (Tr. 27). The record fails to provide any information that this work performed by the Plaintiff for a short period of time constitutes "past relevant" work. Step four of the sequential evaluation process requires the ALJ to review the claimant's RFC and the physical and mental demands of the claimant's past work. 20 C.F.R. §404.1520(e). The ALJ must consider all of the duties of the past work and evaluate the claimant's ability to perform those duties in spite of the impairments. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.2 (11th Cir. 1990). *Schnorr v. Bowen* 816 F.2d 578, 581 (11th Cir. 1987) (finding that the failure to do so rendered the ALJ's classification of the claimant's past employment as "light work" improper).

According to Social Security Ruling 82-62, "past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." In the Plaintiff's case, however, the ALJ failed to fully develop the record regarding the Plaintiff's past work as a survey worker. The record fails to show when this work was performed, how much the Plaintiff earned from this job and whether it was performed at the substantial gainful activity (:SGA"[3]) level. The VE classified the job as a survey worker

---

[3] Only work performed at the SGA level is even considered to be past relevant work. 20 C.F.R. § 404.1565.

as a job performed mostly indoors, when, in fact the job was as a market researcher and performed mostly outdoors. (Tr. 224). This is important in light of the fact that the ALJ found that the Plaintiff should "avoid concentrated exposure to heat, cold and humidity" and could not have been performed by an individual who is outside most of the time. (Tr. 25).

The Plaintiff testified that he was a market researcher for "A. Rudman [phonetic] and Associates" and his day-to-day duties entailed traveling to and from various job sites, carrying his work; with a lot of telephone work as well as interviewing people; and sometimes carrying things weighing up to 50 to 60 pounds, like coolers full of ice cream or chicken, for "people to try ...." (Tr. 224).

Social Security Ruling 82-62 requires the ALJ to make specific findings of fact regarding the "strength, endurance, manipulative ability, mental demands and other job requirements of a claimant's past work. This ruling also recognizes that individuals with cardiac impairments may have performed stressful tasks, and "[t]his may also require a decision as to whether the impairment is compatible with the performance of such work." A review of the ALJ's decision does not disclose any discussion regarding the mental demands of the Plaintiff's past work as required. Dr. Roumi specifically opined that the Plaintiff's symptoms would increase if he were to be placed in a competitive work environment and he is not capable of performing even low stress work.

### (4) THE APPEALS COUNCIL FAILED TO REMAND THIS MATTER TO THE ALJ FOR CONSIDERATION OF NEWLY SUBMITTED EVIDENCE

The Appeals Council failed to remand the matter to the ALJ based on the submission

of new and material evidence. The new evidence consisted of: (1) Dr. Roumi's certification for a disabled parking permit indicating that he has a Class III or Class IV cardiac impairment (according to the standards set by the American Heart Association); and (2) a letter from Dr. Roumi confirming that the Plaintiff has coronary artery disease with dyspnea upon minimal exertion; that his condition had not improved and that he was on Chantex to quit smoking in an attempt to avoid cardiac surgery. The Appeals Council issued its standard denial stating that "this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 6). The Appeals Council failed to demonstrate good cause for not remanding the matter given the materiality of the new evidence.

### III. CONCLUSION

Remand to the Commissioner for further fact-finding is unnecessary because all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that Plaintiff was disabled. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

This Court finds that the ALJ has failed in his burden to articulate the effect of all of the Plaintiff's combined impairments in determining his disability. Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987). Additionally, the ALJ has failed in his burden to provide substantial evidence to this Court that the Plaintiff has the residual functional capacity to perform the exertional and non exertional requirements of any work which exists in the national economy.

For the reasons stated above, the decision of the Commissioner is not supported by substantial evidence. The Clerk shall enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **reversing** the decision of the Commissioner and **awarding** the Plaintiff benefits. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this day 5th of March 2009.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies to: All parties of record.